▮ In the Matter of the Town of Porter et al., Petitioners, v Robert F. Flacke, as Commissioner of the New York State Department of Environmental Conservation, et al., Respondents. — Determination unanimously confirmed, without costs. Memorandum: We find that the record contains substantial evidence to support the commissioner's determinations including, in

particular, the approval of the requested modifications of the existing SPDES permit to allow the additional volume of discharge to the Niagara River via Outfall 001 and to allow the controlled discharge to Outfall 001 on a "batch" basis of such additional ponds and lagoons (other than Fac Pond 3) as may meet the special conditions for prequalification. There is substantial evidence to support the approvals and permits given with respect to the proposed 10-inch pipeline. We note that permission for discharge to the Niagara River of aqueous wastes from the SCA site has existed continuously since the grant of the first SPDES permit in 1974. Such SPDES permit was modified on April 7, 1978 to permit controlled discharge on a "batch" basis of the contents of Fac Pond 3 to the Niagara River via Outfall 001 or, as an alternative, to Lake Ontario through Six Mile Swale and Four Mile Creek. The April 7, 1978 hearing report contained the conclusion, based on chemical analyses of the effluent from Fac pond 3 and on the expert testimony pertaining thereto, that the effluent, if diluted to a minimum dilution ratio of 20:1 would "with a high degree of certainty * * * not be injurious to either fish, mammals or plant life and is acceptable for discharge into either the Niagara River (as originally proposed) or in the alternative to the Swale and Four Mile Creek." The Administrative Law Judge properly accepted this finding as established for the purposes of the instant hearing. Several of the parties to the present litigation participated in or were represented at the hearing prior to the April 7, 1978 decision modifying the SPDES permit. There was no appeal from the April 7, 1978 modification permitting controlled discharge from Fac Pond 3 to Outfall 001 and the Niagara River based upon the finding by the Administrative Law Judge that the 20:1 dilution ratio was adequate for environmental safety. The pipeline approval and the approval of an increase in the volume of discharge to the Niagara River are subject to several special conditions including, most significantly, requirements to assure that the 20:1 dilution ratio will be maintained and that any discharge being conducted will be immediately terminated if the 20:1 ratio is not achieved. Despite the acceptance by the Administrative Law Judge of the prior finding pertaining to the adequacy of the 20:1 ratio, we note that additional tests were performed on samples taken from Fac Pond 3 on June 6, 1979 and June 19, 1979 and that the uncontradicted testimony in the current hearing was that these subsequent tests confirmed the earlier conclusion set forth in the April 7, 1978 report that if diluted to a minimum of 20:1, the effluent would with a "high degree of certainty" be acceptable for discharge. The evidence in the record supports the finding that with the diffuser proposed to be utilized by SCA, a minimum dilution of 20:1 would be achieved at the discharge point in Peggy's Eddy. The evidence also supports the conclusions that based upon the selection of the materials and the type of joints proposed for use in the pipeline and the testing procedures to be employed during installation and the relatively low discharge pressure at the pump "the amount of leakage at any point along the pipeline route is not expected to be significant"; and that with the testing and inspection procedures required and the insistence upon the installation of a clay liner in the trench when permeable soils are encountered, whatever leakage may occur would in all likelihood be detected. There is also a basis in the record for the conclusion that the tests and other prequalification procedures required prior to the discharge of the contents of ponds or lagoons other than Fac Pond 3 provide sufficient safeguards for the identification of any unknown substances and for the establishment of whatever additional effluent limitations or monitoring procedures may be required. We find no ground for reversal in the issuance by the DEC of a negative declaration with respect to the requested SPDES modifications. We note that the negative declaration with respect to

the requested change in numerical effluent parameters and monitoring requirements was set aside and that an environmental impact statement was ordered for such requested change and that any consideration of such request was reserved until Phase 2 of the hearing. The modifications of the SPDES which were granted were in part the subject of the lengthy Phase 1 hearing and of a final environmental impact statement even though a negative declaration for such modification had been previously issued. We find no abuse of discretion in the decision of the Administrative Law Judge to segment the hearing into Phase 1 and Phase 2 in view of the need for prompt solution to the problem created by the large volume of treated aqueous wastes stored on the SCA site and considering the fact that the pipeline taken alone could have an independent temporary utility as the best method available for the disposal of the existing inventory of treated wastes. (Article 78 proceeding transferred by order of Erie Supreme Court.) Present — Hancock, Jr., J. P., Schnepp, Callahan, Doerr and Moule, JJ.